George C. McCORD, Plaintiff,

v.

JET SPRAY INTERNATIONAL
CORP., Defendant.

Civ. A. No. 93–11375–JLT.

United States District Court,
D. Massachusetts.

Dec. 28, 1994.

Jonathan W. Fitch, John J. Pentz, Sally & Fitch, Boston, MA, for plaintiff.

Morris M. Goldings, J. Todd Fernandez, David R. Kerrigan, Mahoney, Hawkes & Goldings, Boston, MA, for defendant.

## MEMORANDUM

TAURO, Chief Judge.

### I.

### BACKGROUND

George McCord, a resident of Antwerp, Belgium, sued Jet Spray International, a Massachusetts corporation, in the Labour Court of Turnhout, Belgium. That suit, based on Jet Spray's breach of an employment contract, resulted in a judgment of 2,629,414 Belgian Francs. Unable to satisfy the judgment in Belgium, McCord has now filed suit in this court, seeking to enforce the Belgian judgment pursuant to M.G.L. ch. 235 § 23A, Massachusetts' version of the Uniform Foreign Money–Judgments Recognition Act. The case is now before the court on the plaintiff's motion for summary judgment.

### II.

### THE RECOGNITION OF FOREIGN JUDGMENTS

A. *Choice of Law.*

■ As an initial matter, this case requires a choice between federal and state law in measuring the effect of a foreign judgment in a federal court sitting in diversity. This issue was specifically left open by the First Circuit in *John Sanderson & Co. (Wool) Pty. Ltd. v. Ludlow Jute Co.*, 569 F.2d 696 (1st Cir.1978). In *Sanderson*, the court held that the federal and state standards for recognition of foreign judgments were sufficiently similar to obviate the need for a choice of law analysis. In declining to address the issue, the court noted:

> The district court held that under *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), state law governs the effect to be given foreign judg-

ments ... Because of the similarity in standards, we do not rule on whether the *Erie* doctrine is to be applied when diversity jurisdiction is invoked for determination of a dispute between an alien and a citizen.

*Sanderson v. Jute,* 569 F.2d at 697, n. 1.

■ Unlike *Sanderson,* however, the present case highlights a significant difference in the applicable state and federal law, requiring that the court choose among the two standards. The difference between state and federal law arises out of the "reciprocity requirement" that is part of Massachusetts' version of the Uniform Foreign Money–Judgments Recognition Act. *See* M.G.L. ch. 235 § 23A. This requirement instructs Massachusetts courts to enforce the judgments of foreign states only to the extent the same foreign state would recognize a judgment rendered in Massachusetts. *See Ducharme v. Hunnewell,* 411 Mass. 711, 585 N.E.2d 321 (1992). The reciprocity requirement, first announced by the Supreme Court in *Hilton v. Guyot,* 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895), is no longer an element of the federal law of enforcement of foreign judgments. *See Tahan v. Hodgson,* 662 F.2d 862, 867 & n. 21 (D.C.Cir.1981).

Some courts, noting that relations between the United States and foreign sovereigns are committed to the federal government, have concluded that state law should not be the "sole referent" in determining the preclusive effect of a foreign judgment. *Hunt v. BP Exploration Co. (Libya),* 492 F.Supp. 885 (N.D.Tex.1980); *Tahan v. Hodgson,* 662 F.2d 862, 868 (D.C.Cir.1981) (noting that "the issue seems to be national rather than state."). These courts have refused to resort to a mechanical application of state law in measuring the effect of a judgment rendered abroad. *Her Majesty the Queen in Right of Province of British Columbia v. Gilbertson,* 597 F.2d 1161 (9th Cir.1979) ("the question presented here carries foreign relations overtones which may create an inference that this should not be decided merely by reference to Oregon law").[1]

---

1. Commentators have also questioned the use of state law in determining the preclusive effect of a foreign judgment. *See* 18 Wright, Miller & Cooper, Federal Practice and Procedure § 4473 (1981

438

These considerations notwithstanding, the majority of cases clearly hold that the issue in question is governed by *Erie* and *Klaxon,* and that federal courts sitting in diversity should use state law to measure the preclusive effect of a foreign country's judgment. *See Success Motivation Inst. of Japan, Ltd. v. Success Motivation Institute, Inc.,* 966 F.2d 1007, 1009–10 (5th Cir.1992) ("*Erie* applies even though some courts have found that these suits necessarily involve relations between the U.S. and foreign governments, and even though some commentators have argued that the enforceability of these judgments in the courts of the United States should be governed by reference to a general rule of federal law.") Wright, Miller & Cooper, § 4473 at n. 2 (1981 & Supp.1994) (listing cases applying state law). This court, therefore, will measure the effect of McCord's Belgian judgment by the law of Massachusetts, as codified in Massachusetts' version of the Uniform Foreign Money–Judgments Recognition Act, M.G.L. ch. 235 § 23A.

B. *The Enforcement of Foreign Judgments Under* M.G.L. ch. 235, § 23A.

The Uniform Foreign Money–Judgments Recognition Act, as adopted in Massachusetts, provides in relevant part:

[A]ny foreign judgment that is final and conclusive and enforceable where rendered even though an appeal therefrom is pending or it is subject to appeal shall be conclusive between the parties to the extent that it grants or denies recovery of a sum of money. The foreign judgment shall be enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit.

M.G.L. ch. 235, § 23A.

Having established the general rule of enforceability, the Act specifically enumerates the instances in which a foreign judgment should not be recognized:

A foreign judgment shall not be recognized if (1) the defendant in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable him to defend; (2) the judgment was obtained by fraud; (3) the cause of action on which the judgment is based is repugnant to the public policy of this state; (4) the judgment conflicts with another final and conclusive judgment; (5) the proceedings in the foreign court were contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court; (6) in the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action; or (7) judgments of this state are not recognized in the courts of the foreign state.

M.G.L. ch. 235, § 23A.

Defendant Jet Spray International raises two of these exceptions in arguing that the Belgian judgment should not be enforced under the Massachusetts statute. First, Jet Spray maintains that the Belgian judgment was based on a cause of action "repugnant to the public policy of this state." M.G.L. ch. 235 § 23A. Second, Jet Spray maintains that the judgment should not be enforced because Massachusetts' judgments are not recognized in Belgium. The court examines these arguments in turn.

1. *The* M.G.L. ch. 235, § 23A *Public Policy Exception.*

▮ Jet Spray argues that McCord's Belgian judgment should not be enforced in Massachusetts because it is based on a cause of action "repugnant to the public policy of this state." M.G.L. ch. 235, § 23A. In support of its argument, Jet Spray notes that the employment contract which lies at the center of the Belgian judgment is in conflict with Massachusetts' policy of "at-will" employment contracts, and would not have been enforceable in a Massachusetts court. Jet Spray also notes that the contract was de-

& Supp.1994) ("it is intrinsically awkward to confront foreign judgments with the potentially divergent law of fifty states and federal courts"); Robert C. Casad, *Issue Preclusion and Foreign Country Judgments: Whose Law?,* 70 Iowa L.J. 53,

77–80 (1984) ("Although the Republic can survive without federalizing the law of foreign judgment recognition, the arguments in favor of that position are strong and the principle argument against it amounts to little more than inertia.").

signed to defraud the Belgian government. In pressing these arguments, however, Jet Spray appears to have misread the scope of a court's inquiry under the public policy exception.

■ The public policy exception operates only in those unusual cases where the foreign judgment is "repugnant to fundamental notions of what is decent and just in the State where enforcement is sought." *Tahan*, 662 F.2d at 864; *Ackermann v. Levine*, 788 F.2d 830, 841 (2d Cir.1986); *See also*, RESTATEMENT (SECOND) OF THE CONFLICT OF LAWS, § 117 (1971). Under the "classic formulation" of the public policy exception, a judgment is contrary to the public policy of the enforcing state where that judgment " 'tends clearly' to undermine the public interest, the public confidence in the administration of the law, or security for individual rights of personal liberty or of private property." *Ackermann*, 788 F.2d at 841 (*quoting Somportex v. Philadelphia Chewing Gum*, 453 F.2d 435, 443 (3d Cir.1971), *cert. denied*, 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972)).

In light of this high standard, it is unnecessary to determine whether the contract at the basis of this dispute would have been enforced in the Commonwealth of Massachusetts. *See Ackermann*, 788 F.2d at 843 & n. 13 ("it is not enough merely that a foreign judgment fails to fulfill domestic practice or policy"). Rather, it is sufficient to note that the employment contract at issue in this case neither "offends our sense of justice [nor] menaces the public welfare." *Id.* at 842. The fact that Massachusetts and Belgium law differ with respect to employment contracts does not make Belgium's law contrary to Massachusetts' public policy.

### 2. *Reciprocity.*

■ M.G.L. ch. 235 § 23A states that "a foreign judgment shall not be recognized if . . . judgments of this state are not recognized in the courts of the foreign state."

M.G.L. ch. 235 § 23A. The court must therefore determine whether Belgium "recognizes" the judgments of Massachusetts within the meaning of section 23A. Having examined the relevant portions of the Belgian Judicial Code, the court finds that Belgian courts would recognize a Massachusetts judgment, and accordingly finds that the reciprocity requirement is not a bar to enforcement of McCord's Belgian judgment.

Article 635 of the Belgian Civil Judicial Code states that Belgians and foreigners alike may be summoned before Belgian courts "for the purpose of having foreign judgments declared enforceable in Belgium." CODE CIVIL, art. 635 (Bel.). Article 570 confers jurisdiction for these actions on the civil court of first instance, and instructs the court on the degree of scrutiny to be given to foreign judgments.[2] Courts are first instructed to "verify" the merits of the action. In addition, article 570 directs Belgian courts to inquire into several aspects of the foreign judgment and the court that rendered it.[3]

Jet Spray maintains that these procedures do not amount to "recognition" of a foreign judgment. The court disagrees. It is evident that Belgium specifically allows actions based upon foreign judgments. Persons seeking to enforce American judgments need not re-try the cause of action upon which their judgment is based. Affidavits submitted by the parties indicate that this review of the merits is limited in nature, and that the defendant bears the burden of proof in establishing that the judgment is not entitled to enforcement. In sum, the evidence submitted by the parties suggests that the Belgian procedures for enforcement of American judgments amount to "recognition" of these judgments within any reasonable definition of the term. The fact that the Belgian courts allow a limited inquiry into the substance of the action does not erase the fact that Belgi-

---

2. In some specific instances judgments from foreign states will be enforced pursuant to treaty. There is no such treaty between the U.S. and Belgium.

3. The statute requires that a Belgian court verify, among other things, the authenticity of the foreign judgment, the basis of jurisdiction in the rendering court, and the impact of the judgment on Belgian public policy.

um officially recognizes a cause of action based upon an American judgment.[4]

Jet Spray also notes that Belgian courts are instructed to inquire as to specific elements of the foreign judgment. Again, this alone does not mean that American judgments are not enforced in Belgium. The court notes that the areas of inquiry specified by article 570 are in many ways similar to the defenses allowed under the Uniform Act. The mere existence of specific defenses to the enforcement of a foreign judgment is not an indication of nonrecognition. *See Ingersoll Milling Machine Co. v. Granger*, 631 F.Supp. 314, 319 n. 2 (N.D.Ill.1986), *aff'd*, 833 F.2d 680 (7th Cir.1987).

In sum, the court concludes that American (and Massachusetts) judgments are recognized in Belgium, and the enforcement of McCord's Belgian judgment does not violate the public policy of Massachusetts. No other exceptions are applicable, and the court finds McCord entitled to have his judgment enforced under the provisions of the Uniform Act.

### III.

### *THE SCOPE OF THE FOREIGN JUDGMENT*

■ Jet Spray argues that even if the Belgian judgment is deemed enforceable under Massachusetts law, the judgment should be offset by payments that were not considered by the Belgian court. Whether or not the court may consider these set-offs depends upon the scope of the Belgian judgment at issue.

■ The scope of a Belgian judgment is a matter of Belgian law. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS, § 98, comment f (1969). Because there was no proof submitted on this aspect of Belgian law, the court assumes that Belgian res judicata principles are similar to those found in the United States. *See Panama Processes, S.A. v. Cities Serv. Co.*, 796 P.2d 276, 291–292 & n. 70 (Okla.1990) (applying domestic principles of res judicata where foreign law was unavailable). The court accordingly assumes that Jet Spray had the opportunity to assert these set-offs in the Belgian action, and that a Belgian court would not reopen its judgment to consider the set-offs presented here.[5] The Belgian judgment is final and conclusive with respect to the employment contract at issue.

### IV.

### CONCLUSION

The enforcement of foreign money-judgments in Massachusetts is governed by the Uniform Foreign Money–Judgments Recognition Act. This act specifically limits the defenses that may be raised in an action to enforce a foreign judgment. Having examined the relevant defenses, the court finds that the Belgian judgment at issue in this case is entitled to recognition as a matter of law. The plaintiff's motion for summary judgment is allowed.

---

4. The conclusion may be different if, for example, there were evidence that Belgium merely allowed American judgments to be admitted as evidence in a distinct cause of action. In that case, it would be more difficult to find that the American judgment was "recognized" for the purposes of the statute.

5. A translated copy of the Belgian judgment, submitted by the defendant, suggests that the Belgian court considered several defenses and counterclaims raised by Jet Spray. Defendant's Memorandum in Opposition, Exhibit A. Jet Spray does not suggest that they were precluded from asserting their set-offs in the Belgian action, and gives no indication of why the Belgian court did not consider the set-offs in entering its judgment. Moreover, the court notes that Jet Spray, after a full defense on the merits in Belgian court, declined to exercise its right to appeal the Belgian judgment.