The SOCIETY OF LLOYD'S, Plaintiff

v.

**John Munroe HAMILTON, et al., Defendants.**

**Civil Action No. 2003–CV–10949–RCL.**

United States District Court, D. Massachusetts.

July 27, 2007.

Mark A. Pogue Edwards & Angell, LLP, Providence, RI, for Plaintiff.

John Munroe Hamilton, Lexington, MA, pro se.

Russel H. Beatie, Philip J. Miller, Beatie and Osborn, LLP, New York, NY, Lawrence G. Cetrulo, Christopher M. Tauro, Cetrulo & Capone LLP, Boston, MA, for Defendants.

## ORDER

LINDSAY, District Judge.

Findings and recommendation ADOPTED by LINDSAY, D.J. on July 27, 2007.

### FINDINGS AND RECOMMENDATION ON PLAINTIFF THE SOCIETY OF LLOYD'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT JOHN MUNROE HAMILTON

ALEXANDER, United States Magistrate Judge.

The plaintiff, The Society of Lloyd's ("Lloyd's"), initiated the instant action against defendant, John Munroe Hamilton ("Mr.Hamilton"), in order to collect a monetary judgment entered against Mr. Hamilton and in favor of Lloyd's in the courts of England.[1] Lloyd's seeks to recover the

---

1. Lloyd's claims against the other defendants in this action have been resolved.

amount of the English judgment pursuant to the Massachusetts Uniform Foreign Money–Judgment Recognition Act, Mass. Gen. Laws ch. 235, § 23A ( ) (the "Recognition Act"). Mr. Hamilton answered Lloyd's Amended Complaint, and included eleven affirmative defenses thereto. Lloyd's now moves for summary judgment against Mr. Hamilton pursuant to Rule 56 of the Federal Rules of Civil Procedure, asseverating that there are no genuine issues of material fact.[2] For the reasons articulated below, this Court FINDS that there are no genuine issues of material fact and, therefore, RECOMMENDS that Lloyd's motion be ALLOWED and summary judgment be entered against Mr. Hamilton.[3]

## BACKGROUND

Multiple Courts of Appeal have previously described Lloyd's unique structure and operation.[4] The Fifth Circuit provides a thorough, yet brief and clear description:

Lloyd's is a 300–year–old market in which individual and corporate underwriters known as "Names" underwrite insurance. The Corporation of Lloyd's which is also known as the Society of Lloyd's, provides the building and personnel necessary to the Market's administrative operations. The Corporation is run by the Council of Lloyd's, which promulgates "Byelaws," regulates the market, and generally controls Lloyd's administrative functions.

Lloyd's does not underwrite insurance; the Names do so by forming groups known as syndicates. Within each syndicate, participating Names underwrite for their own accounts and at their own risk ... each syndicate is managed and operated by a Managing Agent, who owes the Names a contractual duty to conduct the syndicate's affairs with reasonable care ...

Names must become members of Lloyd's in order to participate in the market ... Participation in the market also requires the execution of a number of contracts and agreements, the most important of which is the General Undertaking, the standardized contract between Lloyd's and the individual Names. Names additionally must enter into a

---

**2.** Lloyd's previously moved for summary judgment against Mr. Hamilton in 2005. Shortly thereafter, however, co-defendant Yumiko Honda filed for bankruptcy, necessitating a stay of proceedings. After resolution of Ms. Honda's bankruptcy, District Judge Lindsay re-opened this matter and directed Lloyd's to re-file its motion for summary judgment as pertaining only to Mr. Hamilton, Ms. Honda's involvement having been resolved.

**3.** It should be noted that Mr. Hamilton, at one time represented by counsel during this litigation, has been acting *pro se* since August 19, 2004. While this Court takes appropriate count of Mr. Hamilton's *pro se* status, it is not insignificant that Mr. Hamilton failed to appear for the hearing on Lloyd's initial motion for summary judgment, held July 28, 2005, as well as the hearing on the re-filed motion for summary judgment, held March 15, 2007. It should further be noted that it was Mr. Hamilton who requested the original hearing date

on the re-filed motion, February 7, 2007, be rescheduled, eventually to March 15, 2007, due to a purported family emergency.

On March 15, 2007, because Mr. Hamilton failed to appear at the scheduled hearing, this Court attempted to contact Mr. Hamilton to ascertain his whereabouts. Mr. Hamilton later returned the Court's call explaining, essentially, that he did not appear because he had been unable to resolve the case with Lloyd's and did not think anything could come from the scheduled hearing. In light of Mr. Hamilton's failure to appear, the Court ALLOWED Lloyd's oral motion for the Court to decide the instant motion on the papers.

**4.** *See, e.g., The Society of Lloyd's v. Turner,* 303 F.3d 325, 326–27 (5th Cir.2002); *Lipcon v. Underwriters at Lloyd's, London,* 148 F.3d 1285, 1287–88 (11th Cir.1998); *Richards v. Lloyd's of London,* 135 F.3d 1289, 1291–92 (9th Cir.1998); *Allen v. Lloyd's of London,* 94 F.3d 923, 927–28 (4th Cir.1996).

Member's Agent's agreement, the contract that defines the relationship between the Name and his chosen Member's Agent, and one or more Managing Agent's agreements, which define the relationship between the Name and the managing Agents of the syndicates he wishes to join.

*Haynsworth v. The Corporation,* 121 F.3d 956, 958–59 (5th Cir.1997).

This and numerous other lawsuits stem from severe financial troubles experienced by Lloyd's in the late 1980s and early 1990s. At that time, many Names incurred massive financial losses based largely on asbestos-related and other toxic tort claims. These losses threatened the future viability of the Lloyd's market, and allegedly were aggravated by the inability of some Names to fulfill their underwriting obligations. In responding to this difficult situation, Lloyd's created the Reconstruction and Renewal Plan ("R & R"), requiring all Names to reinsure any liabilities outstanding prior to 1993 with Equitas Reinsurance Ltd. ("Equitas"). The R & R plan further offered a "Settlement Option" for the Names. Those Names who rejected the Settlement Option were obligated to pay the entirety of their outstanding underwriting obligations, including the amount due to Equitas under the R & R. The implementation of this plan was upheld as within Lloyd's regulatory authority by the English courts including that aspect of the R & R that mandated that Names purchase reinsurance from Equitas. *See Society of Lloyd's v. Lyons, Leighs & Wilkinson,* (C.A. 31 July 1997); *Society of Lloyd's v. Turner,* 303 F.3d 325, 327–28 (5th Cir.2002); *The Society of Lloyd's v. Mullin,* 255 F.Supp.2d 468, 470 (E.D.Pa. 2003).

Mr. Hamilton, as well as the other defendants in the instant action, did not accept the Settlement, refusing to pay the Equitas premium. Accordingly, Lloyd's,

through an assignment from Equitas, commenced a program of debt collection against Names, including Mr. Hamilton, who had not paid their Equitas premium in full. Lloyd's commenced legal proceedings against Mr. Hamilton in the High Court of Justice, Queen's Bench Division in London, England (the "English Court"). The English Court entered a judgment against Mr. Hamilton on March 11, 1998 in the amount of £ 164,414.63, plus interest (the "English Judgment"). It is the English Judgment upon which Lloyd's now seeks recovery in this Court.

## DISCUSSION

*Standard of Review*

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding a motion for summary judgment, all facts must be viewed and all reasonable inferences must be drawn in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

*The Recognition Act*

■ Lloyd's seeks to recover the amount of the English Judgment against Mr. Hamilton, £ 164,414.63 plus interest, pursuant to the Recognition Act. The Recognition Act permits enforcement of a "final and conclusive" foreign judgment unless a statutorily provided exception to recognition of the judgment exists. Mass. Gen. Laws. ch. 235, § 23A. As this District previously decided, "federal courts sitting in diversity should use state law to measure the preclusive effect of a foreign country's judgment," and thus Lloyd's is cor-

rect in seeking enforcement pursuant to Massachusetts law. *McCord v. Jet Spray Int'l Corp.*, 874 F.Supp. 436, 438 (D.Mass. 1994).

*Hamilton's Affirmative Defenses*

Hamilton asserts the following eleven affirmative defenses:

1. General denial of the allegations in the Amended Complaint;

2. Unclean hands;

3. Fraud, in that Lloyd's perpetrated a scheme "to pass its asbestos and pollution-related claims exposure to investors by inducing them, without full disclosure of financial liabilities, to become members of Lloyd's";

4. The English Judgment is unenforceable "because it was rendered under a system that did not provide procedures compatible with due process of law";

5. Lloyd's defrauded the British Parliament in order to obtain certain legislative immunity from claims brought by Names;

6. The English Judgement obtained against Mr. Hamilton violated various federal and state laws of the United States;

7. "Lloyd's claim is barred because Mr. Hamilton did not have sufficient notice of the proceeding during which the English Judgements were procured";

8. "The English Judgment against Mr. Hamilton is barred due to lack of reciprocity";

9. "Lack of good faith and fair dealing";

10. "Lloyd's claims against Mr. Hamilton are barred due to payments of amounts owed"; and

11. Lloyd's claims should be stayed pending appeal in the case of *Everard, et al. v. The Society of Lloyd's,*

Citation No. [2003] EWHC 1890(Ch).

As further detailed below, none of these defenses has merit.

■■■ Initially, Mr. Hamilton's second, sixth, eighth, ninth, tenth, and eleventh affirmative defenses are not permitted under the Recognition Act. As this District has recognized, the Recognition Act "specifically limits the defenses that may be raised in an action to enforce a foreign judgment." *McCord*, 874 F.Supp. at 440. None of these affirmative defenses are enumerated in the Recognition Act. Further, as this Court stated in an earlier finding in the instant litigation, "any concerns regarding the validity of the bylaws and other facts leading to the plaintiff's English claim … should have been litigated in English courts pursuant to the General Undertaking." Findings and Recommendation On The Motion to Strike The Affirmative Defenses And To Dismiss The Counterclaims Of The Defendant Yumiko Honda (adopted in full by District Judge Lindsay). Finally, and of note, Mr. Hamilton's eleventh defense is also without merit for the simple fact that Mr. Hamilton is not a party to that proceeding.

■■■ Mr. Hamilton's third and fifth affirmative defenses fail because the "fraud" alleged in these affirmative defenses does not meet the requirements of "fraud" as contemplated by the Recognition Act. While the Recognition Act provides a defense if the foreign judgment is "obtain by fraud," *see* Mass. Gen. Laws ch. 235, § 23A, the fraud "must relate to matters other than issues that could have been litigated and must be fraud *on the court*." *Mullin*, 255 F.Supp.2d at 473 (citations omitted) (emphasis in original). Mr. Hamilton's allegations of fraud specifically stem from his contention that he was fraudulently induced to become a Name. *See, e.g.,* Statement of John M. Hamilton Relative

to Lloyd's Request for Summary Judgment at p. 4 ("I was accepted in 1984 at a time when there was full knowledge within Lloyd's of the solvency problem. If this is not **FRAUD** I would like to know what is!") (emphasis in original). Not only should these defenses of fraud have been raised in England, they were. *See* Declaration of Nicholas P. Demery at ¶ 21; *Jaffray & Ors v. Society of Lloyd's*, 2002 WL 1654876 (C.A. 26 July 2002). The *Mullin* court rejected exactly the same "fraud" defense. 225 F.Supp.2d at 473.

■ Mr. Hamilton's fourth affirmative defense has been ruled upon by numerous courts in this country. Not one has found that the proceedings undertaken by the English Courts during these Lloyd's litigations have not comported with due process. *See, e.g., Society of Lloyd's v. Ashenden*, 233 F.3d 473, 476 (7th Cir.2000) ("Any suggestion that [the English] legal system of courts 'does not provide impartial tribunals or procedures compatible with the requirements of due process of law' borders on the risible."); *Society of Lloyds v. Webb*, 156 F.Supp.2d 632, 642 (N.D.Tex. 2001) (rejecting argument by Name in Lloyd's collection action that English legal system is not fair and impartial; "These numerous [English] proceedings cannot be said to be lacking in due process. The Names had ample opportunities for hearings and appeals and lawsuit . . ."); *Society of Lloyd's v. Grace*, 278 A.D.2d 169, 718 N.Y.S.2d 327, 328 (N.Y.App.Div.2000) (rejecting argument by Name in Lloyd's collection action that English legal system is not fair and impartial; defendants were "afforded notice and an opportunity to be heard in the underlying English action and, accordingly . . . the basic requisites of due process were met."); *Society of Lloyd's v. Mullin*, 255 F.Supp.2d at 473 (same); *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d at 958 ("We have been shown nothing to suggest that an English court would not be fair, and in fact, other courts have long recognized that the courts of England are fair and neutral forums.").

■ Finally, Mr. Hamilton's seventh affirmative defense that he did not receive notice of the legal proceedings which culminated in the English Judgment is unfounded. Mr. Hamilton himself admits in his Answer to the Amended Complaint that he retained an English solicitor to represent him in the English action, thus acknowledging his notice of the English proceedings. *See* Answer to Amended Complaint at ¶ 21. Mr. Hamilton has submitted absolutely no evidence to contradict his own assertion.

As previously held by District Judge Lindsay,

> The Names agree to comply with the provisions of the Lloyd's Acts, as well as any bylaws, provisions, or regulations adopted pursuant to the legislative authority conferred by the Lloyd's Acts. The Names further agree that any rights or obligations arising out of their membership "shall be governed by and construed in accordance with the laws of England." General Undertaking § 2.1. Finally, the General Undertaking requires Names to submit to the jurisdiction of the courts of England for the resolution of any dispute relating to their participation in the Lloyd's market.

*The Society of Lloyd's v. Paul Anthony Campbell–White, et al.*, No. 03–10950–RCL, slip op. at 3 (D. Mass. Aug 23, 2004).

## CONCLUSION

For the reasons articulated above, this Court FINDS that there are no genuine issues of material fact and, therefore, RECOMMENDS that the District Court ALLOW plaintiff's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

SO ORDERED.

**254**

## NOTICE TO THE PARTIES

The parties are hereby advised that under the provision of Rule 3(b) of the Rules of United States Magistrate Judges in the United States District Court the District Court of Massachusetts, any party who objects to this proposed Report and Recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of the Report and Recommendation. The written objections must specifically identify the proportions of the proposed finding, recommendation or report to which objection is made and the basis for such objection. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 273 (1st Cir.1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega*, 678 F.2d 376, 378–79 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir.1980); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985), *reh'g denied*, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986).