671 A.2d 695

Dennis L. BOWERS, A Minor, by his Mother
and Natural Guardian, Sandy BROWN

v.

The ESTATE OF Paula S. FEATHERS, Deceased, By Shirley
Feathers, Administratrix, the Universal Underwriters Insur-
ance Company, An Insurance Corporation, Allstate Insurance
Company, An Insurance Corporation, Keystone Insurance Com-
pany, An Insurance Corporation.

Appeal of The UNIVERSAL UNDERWRITERS INSURANCE
COMPANY, An Insurance Corporation.

Charles ODY, Administrator of the Estate of
Shannon Paul Ody, Deceased, Appellee,

v.

Shirley L. FEATHERS, Administratrix of the Estate
of Paula S. Feathers, Deceased, Appellant,

Dennis L. BOWERS, A Minor, by his Mother
and Natural Guardian, Sandy Brown

v.

The ESTATE OF Paula S. FEATHERS, Deceased, By Shirley
Feathers, Administratrix, the Universal Underwriters Insur-
ance Company, An Insurance Corporation, Allstate Insurance
Company, An Insurance Corporation, Keystone Insurance Com-
pany, An Insurance Corporation.

Appeal of UNIVERSAL UNDERWRITERS INSURANCE
COMPANY, An Insurance Corporation.

Superior Court of Pennsylvania.

Argued May 24, 1995.

Filed Dec. 28, 1995.

Reargument Denied March 6, 1996.

264

266

Robert E. Dapper, Jr., Pittsburgh, for Universal Underwriters Insurance Company & Shirley Feathers.

Patrick J. Demay, Bethel Park, for Dennis L. Bowers, appellee.

Jack A. Wintner, Pittsburgh, for Charles Ody.

Before WIEAND, DEL SOLE and CERCONE, JJ.

WIEAND, Judge:

The primary issue in these consolidated appeals is whether Paula Feathers was an insured and is entitled to coverage under a multiple coverage insurance policy issued by Universal Underwriters Insurance Company while driving a vehicle loaned to her by a dealer. Feathers was an insured and is entitled to coverage under the "garage" portion. However, she was not an insured under the "umbrella" portion, of the policy. Under the garage portion of the policy, moreover, Universal's liability is limited by a valid "most we will pay" clause.

Paula Feathers' car was in the Kelly Shuster Enterprises Garage on May 27, 1991, and, because Feathers was also thinking of buying a new car, the dealership allowed her to take for the weekend a 1991 Dodge. During the course of the weekend, an accident occurred in which Dennis Bowers, a passenger in Feathers' car, sustained injuries causing paraplegia; and Shannon Ody, also a passenger, was killed.[1]

The Dodge vehicle was insured as a Dealer Rent–A–Car (DRAC) vehicle under a policy of insurance issued by Allstate Insurance Company to Chrysler Credit Corporation and the dealership. A personal policy of automobile insurance was also owned by Feathers, having been issued by Keystone Insurance Company. Kelly Shuster was insured under a multiple coverage policy issued by Universal Underwriters. Keystone and Allstate paid policy limits; Universal Underwriters denied liability. In an action for declaratory judgment to determine coverage, which was filed by Dennis Bowers and to which Charles Ody, administrator of the Estate of Shannon Ody, deceased, was joined as an additional plaintiff by consent of all parties, cross-motions for summary judgment were filed. The trial court entered summary judgment against Universal Underwriters and in favor of both Bowers and Ody. Universal appeals from those judgments.[2]

1. Paula Feathers was also killed as a result of the accident.

2. Shirley L. Feathers, administratrix of the Estate of Paula S. Feathers, deceased, also appeals from the entry of summary judgment in a separate, underlying tort action filed by Charles Ody, administrator of

■ "[T]he interpretation of an insurance policy is a question of law for the court." *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.*, 441 Pa.Super. 446, 451, 657 A.2d 1252, 1254 (1995). "Whether a particular loss is within the coverage of an insurance policy is such a question of law and may be decided on a motion for summary judgment in a declaratory judgment action." *Id.* at 451, 657 A.2d at 1255. Summary judgment may be entered where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Hoffmaster v. Harleysville Ins. Co.*, 441 Pa.Super. 490, 495, 657 A.2d 1274, 1276 (1995).

■ "When interpreting a contract of insurance it is necessary to consider the intent of the parties as manifested by the language of the instrument. Where the policy language is clear, the contract will be applied as written." *Insurance Co. of the State of Penn. v. Hampton*, 441 Pa.Super. 382, 385, 657 A.2d 976, 977–978 (1995) (citation omitted). See also: *Alexander v. CNA Insurance Co.*, 441 Pa.Super. 507, 510–511, 657 A.2d 1282, 1284 (1995); *Britamco Underwriters, Inc. v. Grzeskiewicz*, 433 Pa.Super. 55, 59–60, 639 A.2d 1208, 1210 (1994).

■ Universal argues that the trial court erred in classifying Paula Feathers as an insured under the garage coverage part of the policy issued to Kelly Shuster. We disagree.

Under the garage portion of the Universal Underwriters policy, an insured is defined as follows:

WHO IS AN INSURED— ...

With respect to the AUTO HAZARD: ...

the Estate of Shannon Paul Ody, deceased, at Court of Common Pleas of Blair County Civil Division No. 92 C.P. 865. It appears that the judgment was entered due to clerical error. In fact, Ody had not moved for summary judgment in that action. The parties agree that it was the trial court's intent merely to enter summary judgment on the insurance coverage issue at No. 92 C.P. 770 and not the *Ody* tort action. Accordingly, the summary judgment entered at No. 92 C.P. 865 may be vacated.

3. Any other person or organization required by law to be an INSURED while using an AUTO covered by this Coverage Part within the scope of YOUR permission.

The garage portion defines "auto hazard" and "garage operations" as follows:

"AUTO HAZARD" means the ownership, maintenance, or use of any AUTO YOU own or which is in YOUR care, custody or control and:

(1) used for the purpose of GARAGE OPERATIONS or . . .

(3) furnished for the use of any person or organization.

"GARAGE OPERATIONS" means the ownership, maintenance or use of that portion of any premises where YOU conduct YOUR AUTO business and all other operations necessary or incidental thereto.

Feathers was the driver of a car required by law to be insured. She was using the vehicle with the dealer's permission and as a part of the dealer's garage operation. Therefore, Feathers was an insured and was covered by the garage portion of the Universal Underwriters Policy. See: *State Farm Mutual Auto Ins. Co. v. Universal Underwriters Ins. Co.*, *supra* 441 Pa.Super. at 453–454, 657 A.2d at 1255–1256.

An endorsement to the garage policy excluded coverage if the vehicle was "leased or rented to others." Universal argues that Feathers was subject to the exclusion because she was operating the vehicle pursuant to a lease or rental agreement. In support of its position, Universal presented the deposition testimony of William Shuster, owner of the Kelly Shuster dealership, wherein Shuster testified that he had filled out the rental lease agreement paperwork and had given a copy to Feathers. Universal contends that it can be inferred that Feathers agreed to the terms of the rental lease agreement because she allegedly saw the agreement and received a copy of it from Mr. Shuster. There is no dispute that Feathers did not sign the alleged agreement and did not pay any money for use of the vehicle. There was also no evidence that Feathers orally agreed to the terms of the

alleged agreement. Under these circumstances, we accept the trial court's finding that no legally cognizable, commercial agreement or lease for the vehicle was ever reached between the dealership and Feathers. Thus, Feathers was not subject to the garage policy's exclusion of coverage.

■ Feathers argued and the trial court held that Feathers was also entitled to coverage under the "umbrella" part of the multiple coverage policy. Universal contends that this was error.

The umbrella coverage was purchased to provide for excess coverage under the five other features of the policy. By purchasing an umbrella policy, Kelly Shuster obtained, at a comparatively modest cost, $2,000,000 in insurance coverage. "[Umbrella policies give] a financial security, as well as peace of mind, to the individual purchasing such coverage who is hopeful that he [or she] will never be involved in any substantial claim or lawsuit, but, if he [or she] is, is desirous of not losing the security it may have taken a lifetime to acquire." 8A Appleman, Insurance Law and Practice § 4909.85 (1981). This feature of the policy, however, may contain its own definition of an insured. Bowers and Ody concede that Feathers does not meet the umbrella feature's definition of an insured, but nevertheless argue that Feathers is entitled to coverage under the umbrella feature because Universal agreed to "pay for loss in excess of . . . coverage provided in any UNDERLYING INSURANCE."

■ When the language of an insurance policy is clear, the contract should be applied as written. *Insurance Co. of the State of Penn. v. Hampton, supra* 441 Pa.Super. at 385, 657 A.2d at 977–978. Additionally, an insurance policy must be read in its entirety. *Blocker v. Aetna Casualty and Surety Co.,* 232 Pa.Super. 111, 114, 332 A.2d 476, 478 (1975). Even though the garage part qualifies as an underlying insurance, Feathers did not become an insured under the umbrella feature of the policy merely because she was an insured under the garage policy. To be an insured under the umbrella feature, Feathers was required to meet the policy require-

ments therefor. This she failed to do. We should not ignore the umbrella's definition of "who is an insured" in order to effect an extension of liability coverage under the umbrella policy. An auto dealer may well purchase umbrella coverage to protect his or her business; however, he or she will not likely purchase such additional coverage for his or her customers. This is particularly so where, as here, the law does not require it.

■ The garage policy contains a "most we will pay" clause as follows:

With respect to persons or organizations required by law to be an INSURED, the most WE will pay is that portion of such limit needed to comply with the minimum limits provision of such law in the jurisdiction where the OCCURRENCE took place. When there is other insurance applicable, WE will pay only the amount needed to comply with such minimum limits.

The trial court held that such a clause is an invalid "escape clause." We disagree.

■ An escape clause is one which purports to relieve the insurer from any obligation to the insured if other coverage is available. *Fryer v. Allstate Ins. Co.*, 392 Pa.Super. 418, 420, 573 A.2d 225, 226 (1990); *Connecticut Indem. Co. v. Cordasco*, 369 Pa.Super. 439, 444, 535 A.2d 631, 633 (1987). "[E]scape clauses are generally disfavored in the law." *Fryer v. Allstate Ins. Co., supra* 392 Pa.Super. at 421, 573 A.2d at 226–227. Where an invalid escape clause exists, it will be stricken and the policy enforced as if the escape provision did not exist. *Connecticut Indem. Co. v. Cordasco, supra* 369 Pa.Super. at 444–445, 535 A.2d at 634.

The clause in this case, however, is not an escape clause. The plain language of the provision requires that Universal provide coverage to those persons "required by law to be an insured" in an amount consistent with the minimum limits required in the jurisdiction where the occurrence took place. See: Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. § 1702 (defining motor vehicle financial responsibility). An

insurer certainly does not expect to assume the uncertain risk of providing unlimited coverage to unknown persons, i.e., those required by law to be an insured.

Paula Feathers was not a named insured in the garage section. She also was not an employee, officer or director of a named insured. She was an insured under the Universal policy only because she was "required by law to be an insured." Therefore, the amount that Universal is required to pay is that "needed to comply with the minimum limits provision of such law in the jurisdiction where the occurrence took place." In Pennsylvania, those limits are $15,000/30,000.

 There are no policy reasons for holding invalid the "most we will pay" section of the Universal policy. In *Paylor v. Hartford Ins. Co.*, 536 Pa. 583, 640 A.2d 1234 (1994), the Supreme Court said:

> "It is only when a given policy is so obviously for or against the public health, safety, morals or welfare, that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in [declaring what is or is not in accord with public policy]." *Mamlin v. Genoe*, 340 Pa. 320, 325, 17 A.2d 407, 409 (1941). The phrase "public policy" has been used also when the courts have interpreted statutes broadly to help manifest their legislative intent. *Jeffrey v. Erie Insurance Exchange*, 423 Pa.Super. 483, 621 A.2d 635 (1993).
>
> The repeal of the No–Fault Act and the enactment of the MVFRL reflected a legislative concern for the spiraling consumer cost of automobile insurance and the resultant increase in the number of uninsured motorists driving on public highways. *The legislative concern for the increase in cost of insurance is the public policy that is to be advanced by statutory interpretation of the MVFRL.* This reflects the General Assembly's departure from the principle of "maximum feasible restoration" embodied in the now defunct No–Fault Act.

*Id.* at 586–587, 640 A.2d at 1235 (emphasis added).

 "Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations

of supposed public interest." *Hall v. Amica Mut. Ins. Co.*, 538 Pa. 337, 347, 648 A.2d 755, 760 (1994).

> As the term "public policy" is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy.... Only dominant public policy would justify such action. In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the Court should not assume to declare contracts ... contrary to public policy. The courts must be content to await legislative action.

*Muschany v. United States*, 324 U.S. 49, 66–67, 65 S.Ct. 442, 451, 89 L.Ed. 744, 756 (1945) (footnotes and citations omitted).

> It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring. There must be a positive, well-defined, universal public sentiment, deeply integrated in the customs and beliefs of the people and in their conviction of what is just and right and in the interest of the public weal.... Only in the clearest cases, therefore, may a court make an alleged public policy the basis of judicial decision.

*Mamlin v. Genoe*, 340 Pa. 320, 325, 17 A.2d 407, 409 (1941). *Id.* at 347–348, 648 A.2d at 760.

The "most we will pay" clause is not an escape clause. It does not void Universal's obligation under its policy. It limits Universal's coverage under circumstances where other coverage is in place. Such a clause does not violate public policy.

■ The trial court also held the clause was unenforceable because it provided for greater insurance coverage for the primary insured than for those required by law to be insured. The court based its ruling upon *Home Ins. Co. v. McGovern*, 837 F.Supp. 661, 668–669 (E.D.Pa.1993), where the federal

court invoked public policy to invalidate a provision purporting to extend minimum motor vehicle financial responsibility statutory limits to an insured's customer and provide full liability insurance to the insured. The reasoning in *Home Insurance* is unpersuasive. Because it is not binding authority, we decline to follow it.

Other jurisdictions have allowed two classes of insureds with different levels of liability coverage. In great part, these jurisdictions have relied on the right to contract freely. Accordingly, "[a]n insurance company cannot be liable for any greater amount of coverage than that provided by operation of law or voluntarily in its policy." *American Tours, Inc. v. Liberty Mut. Ins. Co.*, 315 N.C. 341, 338 S.E.2d 92, 98 (1986). There is no good "reason why [lessors] cannot insure themselves against liability at higher limits than the limits provided for their lessees ..., so long as the minimum limits of the law are satisfied. If the minimum limits provided by law are inadequate, that is a matter [for] the Legislature." *General Accident Group of Ins. Co. v. Liberty Mutual Ins. Co.*, 191 N.J.Super. 530, 468 A.2d 430, 433 (1983). Insureds are free to limit coverage, so long as it is in excess of the minimum amount required by law, and thereby obtain a lower premium because of the exclusion of a high risk. *State Farm Mut. Auto. Ins. Co. v. Mastbaum*, 748 P.2d 1042, 1044 (Utah 1987). See also: *Lindsey v. Colonial Lloyd's Ins. Co.*, 595 So.2d 606, 613 (La.1992) (neither public policy nor insurance code requires invalidation of two-tier insurance policy); *Rogers v. Snappy Car Rental, Inc.*, 272 N.J.Super. 346, 639 A.2d 1154, 1159 (1993) (step down provisions are valid as long as the statutory minimum is satisfied); *Patton v. Lindo's Rent-A-Car, Inc.*, 415 So.2d 43, 45 (Fla.App.1982) (once requirements of Florida's Financial Responsibility Law are satisfied, the parties are free to contract between themselves as to any additional responsibility); *Balboa Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 17 Ariz.App. 157, 496 P.2d 147, 149 (1972) (enforcing step down provision where lessor's policy limited lessee's coverage in a rental vehicle to the amount specified by the state's Financial Responsibility Act).

Since the underlying accident occurred in Pennsylvania, Universal is responsible to respond in damages in the amounts set forth by section 1702 of the MVFRL. Section 1702 provides that financial responsibility is "[t]he ability to respond in damages for liability on account of [motor vehicle accidents] in the amount of $15,000 because of injury to one person in any one accident, in the amount of $30,000 because of injury to two or more persons in any one accident and in the amount of $5,000 because of damage to property of others in any one accident." 75 Pa.C.S. § 1702. This holding is consistent with the view that the "courts have no authority to extend the liability of the insurance company beyond the contract made in full compliance with the law." *Kyle v. McCarron*, 201 Pa.Super. 403, 411–412, 192 A.2d 253, 258 (1963).

Accordingly, we hold that Feathers is entitled to the coverage available under the garage portion, but not the umbrella feature, of the Universal Underwriters policy. The scope of the policy's umbrella's coverage extends only to those who qualify as insureds under that part of the policy, and it is clear that Feathers does not so qualify. Finally, the coverage available under the garage part is the statutory minimum limit, rather than the full policy limits.

The summary judgment entered by the trial court is affirmed in part and reversed in part as set forth in the foregoing Opinion. The summary judgment entered at No. 92 C.P. 865 is vacated.