## Prudential Property and Casualty Insurance Co. v. Garlin

*Karl R. Hildabrand,* for plaintiff.
*Richard J. Palazzo,* for defendant.

CULLEN, *J.,* May 23, 2003—Before the court for disposition are the cross-motions for summary judgment filed by Prudential Property and Casualty Insurance Company and Niles L. Garlin. The issue is whether Niles L. Garlin is entitled to claim underinsured motorist benefits under motor vehicle insurance policies issued by Prudential to his two adult daughters who resided in his household at the time of his injury in addition to recovering underinsured motorist benefits under his own Prudential policy.

## PROCEDURAL AND FACTUAL BACKGROUND

On June 19, 2000, plaintiff, Prudential Property and Casualty Insurance Company filed a complaint for declaratory judgment against defendants, Niles L. Garlin, Jennifer Garlin and Chrissy Lynn Garlin, seeking a judicial determination that Garlin was not entitled to coverage for underinsured motorist benefits under the terms of separate Prudential motor vehicle insurance policies issued to his two adult daughters who resided with him at the time he was injured in a motor vehicle accident.

On July 13, 2000, Garlin[1] filed an answer to the complaint.

On January 4, 2002, pursuant to a stipulation of counsel, Garlin filed an amended answer and new matter to the complaint.[2]

On January 22, 2003, Prudential filed its motion for summary judgment.

On January 31, 2003, Garlin filed a response to Prudential's motion for summary judgment and contemporaneously filed his own motion for summary judgment to which Prudential responded on February 19, 2003.

The parties have filed briefs in support of their respective positions, and the matter is ready for disposition.

The pertinent facts are not disputed.

---

1. Although they are named as defendants and were served with the complaint, neither Jennifer Garlin nor Chrissy Lynn Garlin have responded to the complaint and no entry of appearance has been filed on their behalf.

2. According to the docket, Prudential did not file a reply to new matter. It does not appear that the amended answer and new matter was endorsed with a notice to plead. See Pa.R.C.P. 1026(a).

On December 23, 1998, Garlin was injured while operating his 1985 Ford LTD when he was involved in a motor vehicle accident in East Hempfield Township, Lancaster County, Pennsylvania. The accident was the result of the negligence of the other driver, Janet L. Fisher. At the time of the accident, Garlin was insured under a policy issued by Prudential. (Complaint, exhibit A.) Ms. Fisher was insured by State Farm Insurance Company with $50,000 liability coverage. Following the accident, State Farm paid the $50,000 liability limit under its policy.

Garlin's Prudential policy provided $15,000 per person and $30,000 per accident underinsured motorists coverage[3] (with stacking). (Complaint, exhibit B.) Two automobiles were listed as covered under Garlin's policy, the 1985 Ford LTD and a 1989 Oldsmobile Cutlass. *Id.* The licensed drivers listed as residing in the household in addition to Garlin were Martha L. Garlin, Chrissy L. Garlin and Jennifer S. Garlin. *(Id.)*

Garlin made a claim for underinsured motorists benefits to Prudential, and Prudential paid him $30,000.

At the time of the accident, Garlin's two adult daughters resided in his household. One daughter, Jennifer Garlin, had a separate motor vehicle insurance policy with Prudential (complaint, exhibit A)[4] which provided

---

3. The purpose of underinsured motorists coverage is to protect the insured from the risk that a negligent driver of another vehicle will cause injury to the insured and will have inadequate insurance coverage to compensate the insured for his injuries. *Eichelman v. Nationwide Insurance Company,* 551 Pa. 558, 711 A.2d 1006 (1998).

4. The motor vehicle insurance policies issued by Prudential to Garlin and his daughters are identical. The identity of the named insured, the vehicle covered and the coverage limits are reflected on the individual declaration pages for each policy.

underinsured motorists coverage in the amount of $50,000 per person and $100,000 per accident. (Complaint, exhibit C.) The vehicle listed on this policy was a 1998 Ford Escort and the same four individuals identified on Garlin's policy were listed as licensed operators residing in the household. *(Id.)*

Chrissy Lynn Garlin also had a motor vehicle insurance policy issued by Prudential (Complaint, exhibit A) covering her 1989 Mercury Topaz. (Complaint, exhibit D.) Her policy provided underinsured motorists coverage in the amount of $15,000 per person and $30,000 per accident. *(Id.)* Again, the same four people were listed on her policy as licensed operators residing in the household.

Anticipating that Garlin would seek underinsured motorists benefits under the policies issued to his daughters who resided in the same household, Prudential filed its declaratory judgment action.

## DISCUSSION

According to Rule 1035.2 of the Pennsylvania Rules of Civil Procedure, after the pleadings are closed any party may move for summary judgment where (1) there is no genuine issue of material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or (2) after completion of discovery, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to the jury. Pa.R.C.P. 1035.2.

A proper grant of summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a prima facie cause of action or defense and, therefore, there is no issue to be submitted to the jury. *McCarthy v. Dan Lepore & Sons Co. Inc.* 724 A.2d 938 (Pa. Super. 1998). If the non-moving party fails to come forward with sufficient evidence to establish or contest a material issue to the case, the moving party is entitled to judgment as a matter of law. *Id.* (citing *Ertel v. Patriot-News Co.,* 544 Pa. 93, 674 A.2d 1038 (1996), *cert. denied,* 519 U.S. 1008, 117 S.Ct. 512, 136 L.Ed.2d 401 (1996)).

The adverse party may not rest on the allegations in the pleadings, but must respond to the motion as provided in Rule 1035.3(a) and (b). If the adverse party fails to respond to the motion as required, summary judgment may be entered against him. Pa.R.C.P. 1035.3(d); *Harber Philadelphia Center City Office Limited v. LPCI Limited Partnership,* 764 A.2d 1100 (Pa. Super. 2000), *appeal denied,* 566 Pa. 664, 782 A.2d 546 (2001).

The court must view the record in the light most favorable to the non-moving party and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Pennsylvania State University v. County of Centre,* 532 Pa. 142, 615 A.2d 303 (1992).

In *Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 469 A.2d 563 (1983), the Pennsylvania Supreme Court summarized the law of this jurisdiction with respect to the interpretation of insurance contracts:

"The principles governing our interpretation of a contract of insurance are familiar and well settled. The task of interpreting a contract is generally performed by a court rather than by a jury. . . . The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument. . . . Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. . . . Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language." *Id.* at 304-305, 469 A.2d at 566. (citations omitted)

Contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. *Madison Construction Company v. Harleysville Mutual Insurance Company,* 557 Pa. 595, 735 A.2d 100 (1999). The court, however, is not to distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity. *Id.* Generally, a clear and unambiguous contract provision must be given its plain meaning unless to do so would be contrary to a clearly expressed public policy. *Eichelman v. Nationwide Insurance Company,* 551 Pa. 558, 711 A.2d 1006 (1998).

The pertinent definitions in the policy are:

*"Household Resident*

"A *household resident* is someone who lives in your household. A *household resident* includes a *resident relative.* . . .

*"Resident Relative*

"A *resident relative* is someone who lives in *your* household and is related to *you* by blood, marriage, adoption or is a ward or foster child. . . .

*"You or Your*

*"You* or *your* means the person shown as the named insured on the declarations of this policy, and *your* spouse, if he or she lives in *your* household. . . .

*"We, Us, or Our*

*"We, us, or our* means Prudential Property and Casualty Insurance Company or one of its subsidiaries as shown on *your* declarations." (Complaint, exhibit A, definitions, p. 2.)

Part 5 of the policy deals with underinsured motorists coverage and contains the following:

*"Who Is Insured (Part 5)*

*"In Your Car (Includes a Substitute Car)*

*"You* and a *resident relative* are insured while using *your car* or a substitute *car* under this part.

"Other people are insured while using *your car* or a substitute *car* covered under this part if *you* give them permission to use it. They must use the *car* in the way *you* intended.

*"In a Non-Owned Car*

*"You* and a *resident relative* are insured while using a *non-owned car.* The owner must give permission to use it. It must be used in the way intended by the owner. . . .

*"Losses We Will Not Pay For (Part 5) . . .*

*"Other Household Vehicles*

*"We* will not pay for *bodily injury* to anyone occupying or struck by a *motor vehicle* owned or leased by *you* or a *household resident* which is not covered under this policy, or if the liability coverage of that vehicle is used to pay any portion of an insured's *bodily injury* liability claim.

*"Regularly Used Non-Owned Motor Vehicles*

*"We* will not pay for *bodily injury* to *you* or a *household resident* using a *non-owned motor vehicle* not insured under this part, regularly used by *you* or a *household resident.* . . .

*"Stacking of Underinsured Motorists Coverage Limits*

"If *you* have selected this option (the declarations will indicate stacking applies) then stacking of coverage under this part applies to *you* and a *resident relative* insured under this part. This means that *you* or a *resident relative* can add or stack the underinsured motorists coverage limits of other *cars* insured for this coverage by *us* upon the underinsured motorists coverage limits of the *car* involved in the accident or loss.

"The *Limit of Coverage* in the *general provisions* and section titled *Limit of Coverage* under 'How we will settle a claim' under part 5 do not apply." (Complaint, exhibit A, part 5, pp. 8-9.)

The parties initially dispute whether Garlin is an insured under his daughters' policies. Under the Motor Vehicle Financial Responsibility Law, an "insured" is defined as any of the following:

"(1) An individual identified by name as an insured in a policy of motor vehicle liability insurance.

"(2) If residing in the household of the named insured:

"(i) a spouse or other relative of the named insured; or

"(ii) a minor in the custody of either the named insured or relative of the named insured." 75 Pa.C.S. §1702.

The policy at issue here states:

*"Who Is Insured (Part 5)*

*"In Your Car (Includes a Substitute Car)*[5]

*"You* and a *resident relative* are insured while using *your car* or a *substitute car* covered under this part.

"Other people are insured while using *your car* or a substitute *car* covered under this part if *you* gave them permission to use it. They must use the *car* in the way *you* intended.

*"In A Non-Owned Car*[6]

*"You* and a *resident relative* are insured while using a *non-owned car.* The owner must give permission to use it. It must be used in the way intended by the owner."

Prudential argues that Garlin is not an insured under his daughters' policies since he was driving his own vehicle and not either of his daughters' vehicles at the time of the accident. It is apparent that he was not driving a "substitute car" or a "non-owned car" at the time of the accident.

The issue of whether the narrower definition of "insured" in the policy language cited above conflicts with the MVFRL was decided in *Prudential Property and*

---

5. Part 5 of the policy defines *Substitute Cars* as follows:

*"Substitute Cars*

"If a *car* owned under this part breaks down, is being serviced or repaired, or is stolen or destroyed, *we* will cover a *car you* borrow temporarily (with the owner's permission) while *your car* is being repaired or replaced. This *car* cannot be owned by *you* or a *household resident.* The substitute *car* has the same coverage as the *car* that is out of service." (Complaint, exhibit A, part 5, p. 7.)

6. The term *non-owned car* is also defined in the policy:

*"Non-Owned Car*

"A *non-owned car* is a *car* which is not owned by, registered in the name of or furnished or available for the regular or frequent use of *you* or a *household resident.*" (Complaint, exhibit A, definitions, p. 2.)

*Casualty Insurance Company v. Colbert,* 572 Pa. 82, 813 A.2d 747 (2002). In *Colbert,* a motorist was injured in an automobile accident while driving his own vehicle which was insured by State Farm Insurance Company. *Id.* At the time of the accident, the motorist resided with his parents who owned three vehicles all of which were insured with underinsured motorists coverage under a single policy issued by Prudential. *Id.* The injured motorist settled his claim with the negligent party and received the policy limits. *Id.* He also recovered the maximum underinsured motorists benefits under his own policy with State Farm. *Id.* He then made a claim for underinsured motorists coverage under his parents' policy with Prudential. *Id.*

Prudential denied coverage on two grounds: first, the motorist was not an "insured" under his parents' policy; and second, the "other household vehicle" exclusion in the Prudential policy expressly excluded coverage for accidents occurring while the insured or household resident was using another owned vehicle not insured under the Prudential policy. *Id.*

Prudential filed a declaratory judgment action against the injured motorist and his parents in federal court. *Id.* The parties filed cross-motions for summary judgment, and the district court granted Prudential's motion, finding that the motorist was not an "insured" under the Prudential policy and that he was excluded from coverage under the "other household vehicle" exclusion. *Id.* The motorist and his parents took an appeal to the United States Court of Appeals for the Third Circuit which certified two questions of Pennsylvania law to the Pennsylvania Supreme Court. *Id.*

The first question certified was whether the definition of "insured" in the Prudential policy, which is identical to the language in exhibit A, impermissibly narrowed and conflicted with the statutory definition of "insured" in the MVFRL. *Id.* The Pennsylvania Supreme Court held that the policy language conflicted with the MVFRL because it deemed a resident relative to be "insured" only when using a vehicle specifically insured under the Prudential policy. *Id.*

The decision in *Colbert* is controlling in this case. The definition of "insured" in exhibit A, part 5, impermissibly narrows and, therefore, conflicts with the plain language of the MVFRL. Accordingly, the court concludes that Garlin is an "insured" under the motor vehicle insurance policies issued by Prudential to each of his daughters pursuant to section 1702 of the MVFRL. *Prudential Property and Casualty Insurance Company v. Colbert,* 572 Pa. 82, 813 A.2d 747 (2002).

Even though Garlin is an "insured" under his daughters' policies, it still must be determined whether he is precluded from recovering underinsured motorists benefits due to the "other household vehicle" exclusion.

The "other household vehicle" exclusion in the subject policies provides:

*"Other Household Vehicles*

*"We* will not pay for *bodily injury* to anyone occupying or struck by a *motor vehicle* owned or leased by *you* or a *household resident* which is not covered under this policy, or if the liability coverage of that vehicle is used to pay any portion of an insured's *bodily injury* liability claim." (Complaint, exhibit A, part 5, p. 8.)

This identical language was described as a "family car exclusion" in *Colbert* as it excludes coverage for an otherwise insured individual where that person is occupying a separately owned vehicle that is not insured under the subject policy. *Prudential Property and Casualty Insurance Company v. Colbert,* 572 Pa. 82, 813 A.2d 747 (2002). Since Garlin was driving his own vehicle at the time of the accident which was not listed on either Prudential policy issued to his daughters, the plain language of the "other household vehicle" exclusion would warrant Prudential in denying his claim for underinsured motorists benefits under those policies unless the exclusion is unenforceable as violative of clearly expressed public policy. *Id.*

This leads to the next point of contention between the parties which is the same as the second question certified by the United States Court of Appeals for the Third Circuit in *Colbert, i.e.,* whether the "other household vehicle" exclusion in the Prudential policy is void as against public policy. *Id.*

"Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. As the term 'public policy' is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy. . . . Only dominant public policy would justify such action. In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the court should not assume to declare contracts . . . contrary to public policy. The courts must be content to await legis-

lative action." *Burstein v. Prudential Property and Casualty Insurance Co.,* 570 Pa. 177, 809 A.2d 204, 207 (2002) (quoting *Eichelman v. Nationwide Insurance Company,* 551 Pa. 558, 711 A. 2d 1006, 1008 (1998)).

"It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring [that the contract is against policy]." *Mamlin v. Genoe,* 340 Pa. 320, 325, 17 A.2d 407, 409 (1941).

The application of public policy concerns in determining the validity of an insurance exclusion is dependent upon the factual circumstances presented in each case. *Paylor v. Hartford Insurance Co.,* 536 Pa. 583, 640 A.2d 1234 (1994).

The legislative concern for the increasing cost of insurance is the public policy that is to be advanced by statutory interpretation of the MVFRL. *Burstein v. Prudential Property and Casualty Insurance Co.,* 570 Pa. 177, 809 A.2d 204 (2002). The court commented there:

"In light of the primary public policy concern for the increasing costs of automobile insurance, it is arduous to invalidate an otherwise valid insurance contract exclusion on account of that public policy. This policy concern, however, will not validate any and every coverage exclusion; rather, it functions to protect insurers against forced underwriting of unknown risks that insureds have neither disclosed nor paid to insure. Thus, operationally, insureds are prevented from receiving gratis coverage, and insurers are not compelled to subsidize unknown and

uncompensated risks by increasing insurance rates comprehensively." *Id.* at 184-85, 809 A.2d at 208.

Prudential asserts that the present case is controlled by *Colbert* and that Garlin should not be permitted to obtain coverage under his daughters' policies for which he did not pay.

Garlin argues that *Colbert* is not dispositive of the issue presented because the facts in this case differ from those in *Colbert.* In the present case, unlike *Colbert,* all four vehicles owned by members of the Garlin family were insured under policies issued by Prudential. Garlin and his daughters each purchased underinsured motorists coverage and paid the premium for this coverage. Each policy listed all four members of the family as licensed operators residing in the household.

After careful consideration of the parties' arguments and the applicable law, the court must conclude that Prudential's position is correct.

The Supreme Court has reiterated that the legislative concern for the spiraling consumer cost of automobile insurance is the public policy to be advanced by the statutory interpretation of the MVFRL. *Prudential Property and Casualty Insurance Company v. Colbert,* 572 Pa. 82, 813 A.2d 747 (2002); *Burstein v. Prudential Property and Casualty Insurance Company,* 570 Pa. 177, 809 A.2d 204 (2002); *Paylor v. Hartford Insurance Co.,* 536 Pa. 583, 640 A.2d 1234 (1994). In the present case, Prudential may not be asked to underwrite an unknown risk since it insures each vehicle owned by members of the Garlin family. However, the spectre of providing Garlin with coverage for which he has not paid remains.

Both Garlin and his daughter, Chrissy, purchased the minimum $15,000/$30,000 underinsured motorists coverage. Jennifer, however, purchased more than three times the minimum coverage when she obtained underinsured motorists coverage of $50,000 per person and $100,000 per accident. Under the policy as it is written, Garlin would not be able to recover this higher level of underinsured motorists benefits. He would and did receive the coverage for which he paid. Voiding the "other household vehicle" exclusion, however, would allow him to collect underinsured motorists benefits under both his daughters' policies and in an amount far greater than that for which he paid.

This is similar, although not identical, to the mischief the Supreme Court sought to discourage in *Eichelman v. Nationwide Insurance Company,* 551 Pa. 558, 711 A.2d 1006 (1998). In *Eichelman,* a motorist who had waived underinsured motorists coverage on his own policy sought to recover such benefits under the policies issued to his mother and her husband with whom the motorist resided. *Id.* The Supreme Court upheld the "household exclusion" under the circumstances noting:

"Allowing the 'household exclusion' language to stand in this case is further bolstered by the intent behind the MVFRL, to stop the spiralling costs of automobile insurance in the Commonwealth. If appellant's position were accepted, it would allow an entire family living in a single household with numerous automobiles to obtain underinsured motorist coverage for each family member through a single insurance policy on one of the automobiles in the household. If this result were allowed, it would most likely result in higher insurance premi-

ums on all insureds (even those without family members living at their residence) since insurers would be required to factor expanded coverage cost into rates charged for underinsured motorist coverage. Thus, allowing the 'household exclusion' language of the two insurance policies at issue to bar recovery by appellant of underinsured motorist benefits is consistent with the intent behind the enactment of the MVFRL." *Id.* at 567, 711 A.2d at 1010.

Accepting Garlin's argument and permitting him to recover underinsured motorists benefits would allow an entire family living in a single household with numerous automobiles to obtain a significantly higher level of underinsured motorists benefits through the device of obtaining minimum coverage on all of the vehicles except one. Premiums would certainly increase if insurers were required to provide the higher level of underinsured motorists benefits selected by one policy-holder to all drivers in the household even though only one premium for such higher coverage had been paid.

Accordingly, consistent with the reasoning of the Supreme Court in *Colbert,* Garlin's claim for underinsured motorists benefits under the policies issued to his daughters must be rejected.

Garlin also claims that he is entitled to collect underinsured motorists benefits under his daughters' policies because the policy language in the sections *Other Household Vehicles, Regularly Used Non-Owned Motor Vehicles* and *Stacking of Underinsured Motorists Coverage Limits* is reasonably susceptible of two different interpretations and should be construed in his favor to afford coverage. Garlin does not clearly articulate how

he arrived at his determination that the sections referred to are reasonably susceptible of two different interpretations, and the court sees no ambiguity in the cited provisions which would warrant such a conclusion. Further, the court remains mindful of the admonition that it is not to distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity. *Madison Construction Company v. Harleysville Mutual Insurance Company,* 557 Pa. 595, 735 A.2d 100 (1999). Garlin's argument in support of this final proposition is unpersuasive.

For the reasons stated above, the court finds that Prudential is entitled to judgment in its favor. Therefore, the following order is entered:

## ORDER

And now, May 23, 2003, the motion of plaintiff, Prudential Property and Casualty Insurance Company, for summary judgment is granted. The cross-motion for summary judgment filed by defendant, Niles L. Garlin, is denied.