J-A04013-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CYNTHIA DEASEY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HOLY REDEEMER HEALTH SYSTEM, | : | No. 2398 EDA 2022 |
| INC., JOSEPH J. CASSIDY AND HANK | : | |
| UNGER, M.D. | : | |

Appeal from the Order Entered August 24, 2022
In the Court of Common Pleas of Philadelphia County
Civil Division at No:  220301122

BEFORE:   STABILE, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY STABILE, J.:                    **FILED MAY 28, 2024**

Cynthia Deasey (Deasey) appeals an order of the Court of Common Pleas of Philadelphia County (trial court) sustaining preliminary objections in the nature of a demurrer as to her wrongful termination claims against Appellees, Holy Redeemer Health System, Inc. (Redeemer); Joseph J. Cassidy (Cassidy); and Hank Unger, M.D. (Dr. Unger).  We affirm.

Deasey began working as a nurse practitioner at Redeemer's Cancer Center on August 12, 2020.  The Cancer Center operates as a private, non-public entity, and Deasey was an at-will employee.  On September 1, 2021, Redeemer implemented a new policy requiring all of its employees to receive a COVID-19 vaccine.  Employees who did not want to be vaccinated were

_____

[*] Retired Senior Judge assigned to the Superior Court.

permitted to request special accommodations for their sincerely held religious beliefs.

Deasey made such a request, and it was denied. Redeemer then informed Deasey that her employment would be terminated unless she could show proof of vaccination. Deasey refused to comply, and Redeemer terminated her employment on October 8, 2021.

A few months later, Deasey filed suit against Redeemer. She also named as defendants Redeemer's vice president and chief of human resources (Cassidy), and Redeemer's chief medical officer (Dr. Unger). Deasey asserted a claim of wrongful termination against each of those parties in counts I, II, and III of her complaint. She also asserted employment discrimination claims against each of them in counts IV, V, and VI, based on alleged violations of the Pennsylvania Human Relations Act (PHRA). Finally, in counts VII and VIII, Deasey asserted claims of intentional infliction of emotional distress and negligent infliction of emotional distress against the three Appellees collectively in each count.

Appellees filed preliminary objections in the nature of a demurrer as to all eight counts. They argued that the wrongful termination claims – counts I, II, and III – were deficient because Deasey had failed to identify a Pennsylvania public policy that would prohibit the termination of her employment due to non-compliance with their vaccine mandate.

With respect to counts IV, V, and VI, Appellees maintained that the claims were barred because they had to be raised first in a charge of

discrimination with the Unites States Equal Employment Opportunity Commission (EEOC), which would then have exclusive jurisdiction for a one-year period; Deasey's civil complaint was filed only three months after her charge was filed with the EEOC. Similarly, Appellees argued that counts VII and VIII were procedurally barred by the exclusivity provisions of the Pennsylvania Workers' Compensation Act (PWCA).

In her response in opposition to Appellees' preliminary objections, Deasey asserted that her wrongful termination claims were viable because she had properly invoked the public policies established in the Pennsylvania Constitution; the Medical Care Availability and Reduction of Error Act (MCARE); the Pennsylvania Patient's Bill of Rights; the PHRA; and Pennsylvania common law. **See** Memorandum of Law in Support of Opposition to Amended Preliminary Objections, 5/9/2022, at 5-19.

Deasey did not dispute that she had filed her civil claims in counts IV, V, and VI only three months after filing a charge of discrimination with the EEOC. But since the charge already had been dismissed, Deasey argued, she was not procedurally barred. **See id**., at 20-23. Deasey conceded that counts VII and VIII were barred by the PWCA. **See id**., at 24.[1]

_____

[1] In the present appeal, Deasey does not advance any developed, substantive grounds challenging the trial court's dismissal of counts IV through VIII. All of her arguments are instead focused on the dismissal of her wrongful termination claims in counts I, II, and III of the complaint. **See Harkins v. Calumet Realty Co.**, 614 A.2d 699, 703 (Pa. Super. 1992) (issues not developed in a brief's argument section will be deemed waived for purposes of appellate review).

The trial court initially entered an order on July 25, 2022, dismissing all of eight of Deasey's claims with prejudice. Deasey then filed a motion for reconsideration of that order, asking that it be modified so that she could exhaust her administrative remedies and re-file her discrimination claims in counts IV, V, and VI. The trial court granted the motion for reconsideration. The initial order was vacated, and an amended order was entered which reflected that counts IV, V, and VI were dismissed without prejudice. Deasey timely filed a notice of appeal, and the trial court entered an opinion in compliance with Pa.R.A.P. 1925(a). *See* Trial Court 1925(a) Opinion, 9/27/2022, at 1-2.[2]

In her brief, Deasy now argues that the trial court erred in dismissing counts I, II, and III of her complaint because she had pleaded sufficient facts to survive Appellees' preliminary objections. *See* Appellant's Brief, at 5, 10-30. On review of the trial court's order, the following standards apply:

> Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.
>
> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary

---

[2] An initial notice of appeal was filed after the entry of the order on July 25, 2022. That appeal, docketed at case number 2209 EDA 2022, was quashed soon after the trial court's amended order was entered. Although the trial court and the parties refer to the latter order as being entered on August 19, 2022, the case docket reflects an entry date of August 24, 2022.

> objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

***Feingold v. Hendrzak***, 15 A.3d 937, 941 (Pa. Super. 2011) (quoting ***Haun v. Comm. Health Sys., Inc.***, 14 A.3d 120, 123 (Pa. Super. 2011)).

Here, Deasey has reiterated in her brief that the termination of her employment due to non-compliance with a COVID-19 vaccine mandate conflicted with the public policies outlined in the Pennsylvania Constitution; MCARE; the PHRA; the Pennsylvania Patient's Bill of Rights; and Pennsylvania common law. However, we agree with the trial court that Deasey did not sufficiently plead her claims of wrongful termination because, as a matter of law, none of the public policies established within the above authorities are violated by the manner in which Appellees terminated her employment.

"In Pennsylvania, absent a statutory or contractual provision to the contrary, either party may terminate an employment relationship for any or no reason." ***Weaver v. Harpster***, 975 A.2d 555, 562 (Pa. 2009). As a result, the general rule in Pennsylvania is that "there is no common law cause of action against an employer for termination" of an at-will employee. ***Id***.

Exceptions to this general rule are recognized "only in the most limited of circumstances, where discharges of at-will employees would threaten clear

mandates of public policy." *Id*. at 562-63 (quoting *Clay v. Advanced Computer Apps*, 559 A.2d 917, 918 (Pa. 1989)). It is only "in the clearest of cases" that a court will declare a policy that "is so obviously for or against public health, safety, morals, or welfare that there is a virtual unanimity of opinion in regard to it." *Weaver*, 975 A.2d at 563 (quoting *Mamlin v. Genoe (City of Phila. Police Beneficiary Ass'n)*, 17 A.2d 407, 409 (Pa. 1941)). To determine if a public policy exists, Pennsylvania courts must "look to our Constitution, court decisions, and statutes promulgated by our legislature." *Weaver*, 975 A.2d at 563.

Deasey first directs this Court's attention to sections 1, 3, and 7 of Article I of the Pennsylvania Constitution, suggesting that these provisions support a common law claim of wrongful discharge because they express a public policy of granting citizens "free choice and denial of medical treatment." Appellant's Brief, at 14.

Article I enumerates the rights of citizens of the Commonwealth. Section 1 of Article I declares the inherent rights of mankind, such as the freedoms of equality, life and liberty; Section 3 declares the right to religious freedom to "worship Almighty God according to the dictates of their own consciences"; and Section 7 declares the right to freedom of the press and speech. Pa. Const. art. I, §§ 1, 3, and 7.

None of these provisions support Deasey's wrongful termination claims because, according to Article I, Section 25, they only apply as a bar to

*government action*. **See** Pa. Const. art. I, § 25 ("[E]verything in this article is excepted out of the general powers of government and shall forever remain inviolate."). It is undisputed in this case that Appellees are private, and not public, entities. Deasey has even made it clear that "[n]o allegation of state action has been made." Appellant's Brief, at 11. Accordingly, Deasey cannot rely on the public policies embodied by any sections of Article I of the Pennsylvania Constitution to support her claims against private parties with whom she is engaged in an at-will employment relationship.

Deasey next relies on two statutes in arguing that Pennsylvania has adopted a public policy which guarantees "a citizen's right to reject medical treatment," including the refusal of a vaccine mandated by a private employer. *Id*., at 16. Specifically, Deasey cites the informed consent provisions of MCARE (40 P.S. § 1303.504), and the Pennsylvania Patient's Bill of Rights (28 Pa. Code § 103.22(b)(8), (9), and (11)).

Here again, the authorities relied upon by Deasey are of no avail because they are plainly inapplicable to the facts at hand. MCARE and the Patient's Bill of Rights speak to the minimum standards of medical care and confidentiality that must be afforded to a patient by *a medical provider*. **See e.g.**, 40 P.S. § 1303.502 (stating that purpose of MCARE is "to ensure a fair legal process and reasonable compensation for persons injured due to medical negligence in this Commonwealth."); 28 Pa. Code § 103.21 (stating that "the

purpose of [the Patient's Bill of Rights is] to promote the interests and well-being of the patients and residents of hospitals[.]").

The relationship between Deasey and Appellees was that of an employer and an at-will employee. There is no suggestion anywhere in the language of MCARE or the Patient's Bill of Rights that the legislature sought to curb the ability of a private employer from requiring an at-will employee to receive a vaccination. Those statutes do not impose any duties on a private employer of an at-will employee, much less declare a public policy that would be implicated by the health-related mandates of a private employer.

Turning to the PHRA, Deasey asserts that the law articulates a public policy which prohibits discrimination of citizens on the basis of "religious creed." Appellant's Brief, at 24. As the trial court correctly found, however, Deasey may not proceed on her wrongful termination claims in reliance on the PHRA because it prescribes the exclusive administrative remedies resulting from a wrongful discharge based on discrimination. *See* Trial Court 1925(a) Opinion, 9/27/2023, at 9. "[T]he legislature has made the PHRA the exclusive state law remedy for unlawful discrimination, preempting the advancement of common law claims for wrongful discharge based on claims of discrimination." *Weaver*, 975 A.2d at 567 n.10. Moreover, Appellant has noted in her brief that she had separately asserted violations of the PHRA in counts IV, V, and VI of her complaint, and those claims are "not ripe for appeal[.]" Appellant's Brief, at 24 n.16.

Lastly, Deasey argues that the trial court erred in ruling that there is no recognized public policy in common law which would prohibit the termination of employment due to non-compliance with an employer's vaccine mandate. She suggests that the trial court's reasoning was flawed because it treated the issue as one of first impression, and then ruled against her precisely because no earlier cases had considered it. **See** Appellant's Brief, at 27-28.

We find that Deasey has not accurately construed the trial court's ruling. In its 1925(a) opinion, the trial court correctly stated that:

> Generally, an at-will employee has a common law cause of action against an employer for wrongful termination in violation of public policy when (1) the Constitution or a statute specifically prohibits the employer from terminating the at-will employee for a given reason, or (2) the employer terminates the at-will employee (a) for complying with a statutorily-imposed duty; or (b) refusing to commit a crime.
>
> * * * *
>
> [A]n at-will employee has a common law cause of action against an employer for wrongful termination only in the most limited and narrow of circumstances such as when (1) the employer specifically intended to harm the employee by terminating employment or (2) the reason for the termination violates a **_clear_** public policy mandate. **Weaver**, d975 A.2d at 562-63[.]
>
> If the public policy mandate is not **_clear_** and there can be a difference of opinion as to the meaning of the public policy mandate including about what conduct the public policy requires, then the at-will employee does not have a cause of action for wrongful termination in violation of public policy.
>
> Here, the trial court properly found that [Deasey] failed to identify a clear and applicable public policy mandate from the common law that states that an employer is prohibited from terminating an at-will employee for failure to comply with a vaccination requirement.

Trial Court 1925(a) Opinion, 9/27/2023, at 5, 8-9 (some citations omitted; emphases in original).

The trial court's analysis did not contain any misstatements of law or fact. Deasey claimed that a recognized public policy supported her wrongful termination cause of action. The burden was on Deasey to identify such a policy that would preclude Appellees from terminating her at-will employment in response to non-compliance with a vaccine mandate.

Yet, as discussed above, Deasey could not point to any statutorily mandated duties that Appellees' vaccine policy prevented her from carrying out; she could not point to any laws that would be broken as a result of either refusing or accepting a vaccination; and she did not cite to any legal authority in Pennsylvania that recognizes a right of an at-will employee not to comply with the vaccine mandate of a private employer. We therefore uphold the trial court's conclusion that the termination of Deasey's employment due to her non-compliance with a vaccine policy is *not* one of "the clearest of cases" in which there is "virtual unanimity of opinion" that the termination was obviously "against public health, safety, morals, or welfare[.]" **Weaver**, 975 A.2d at 563 (quoting **Mamlin**, 17 A.2d at 409). Thus, since Deasey could not establish a viable cause of action in common law for her wrongful termination, the trial court's order dismissing those claims must stand.

Order affirmed.

Judge Colins joins the memorandum.

Judge McLaughlin concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>5/28/2024</u>